IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBORAH WALLIS and TIANNA NEAL, individually
and on behalf of all others similarly situated,

      Plaintiffs,

v.                 OPINION and ORDER

OZ MANAGEMENT GROUP, INC., d.b.a      21-cv-290-jdp
CUSTOMER CONTACT SERVICE INC., and
DOROTHY ARMSTRONG,

      Defendants.[1]

---

  Plaintiffs Deborah Wallis and Tianna Neal are customer service representatives at call centers in Wisconsin and Minnesota. Plaintiffs contend that defendants violated the Fair Labor Standards Act and state law by failing to pay them for breaks of less than 30 minutes. Plaintiffs move for conditional certification of a collective action under 29 U.S.C. § 216(b), and they ask the court to approve a notice to the collective. Dkt. 42. For the reasons explained below, the court will grant the motion but require plaintiffs to submit a revised notice that corrects defects identified by the court in this order.

ANALYSIS

**A. Legal standard**

  Section 216(b) of the FLSA authorizes plaintiffs to bring "collective actions" against employers to recover unpaid compensation for themselves and on behalf of "other employees

---

[1] The court has amended the caption to reflect the correct spelling of Armstrong's first name, as identified in her answer. *See* Dkt. 55.

similarly situated." 29 U.S.C. § 216(b). Many courts, including this one, apply a two-step approach to certifying collective actions. The first step is conditional certification, which requires the plaintiffs to make a "modest factual showing" that they and potential collective members were subject to a common policy or plan that violated the law. *De Leon v. Grade A Constr. Inc.*, No. 16-cv-348, 2017 WL 1957537, at *2–3 (W.D. Wis. May 11, 2017); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628–29 (W.D. Wis. 2009). The inquiry focuses on "whether potential plaintiffs are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers." *Holmes v. Sid's Sealants, LLC*, No. 16-cv-821, 2017 WL 5749684, at *2 (W.D. Wis. Nov. 28, 20 17) (internal quotations omitted). This is a relatively liberal standard, and it typically results in conditional certification of a representative class. *De Leon*, 2017 WL 1957537, at *2–3.

At the second step, the defendants may move for decertification, at which point the court determines whether the plaintiffs are in fact similarly situated to those who have opted in. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 358 (W.D. Wis. 2014). At that stage, the court applies a standard similar to class certifications under Federal Rule of Civil Procedure 23. *See Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *2 (W.D. Wis. Mar. 6, 2018) (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)).

In this case, plaintiffs contend that defendants violated the FLSA by failing to pay for breaks of less than 30 minutes, and they seek conditional certification of two proposed collectives: one against CTI, LLC, and Dorothy Armstrong, and one against Oz. Dkt. 61, at 1–

2.[2] Plaintiffs allege that CTI was a "a business development company, specializing in inbound and outbound call management, with call centers located throughout the country, including in Wisconsin." Dkt. 40, ¶ 20. Armstrong was CTI's vice president of sales and operations. Dkt. 46, ¶ 4. Oz also runs call centers. In September 2020, it purchased CTI's assets and hired many of CTI's employees. Plaintiffs initially proposed only one collective that grouped all defendants together, but plaintiffs proposed two collectives in response to objections by defendants.

Plaintiffs voluntarily dismissed CTI after briefing the motion for conditional certification because CTI sold its assets and was dissolved. Dkt. 64. So plaintiffs first proposed collective is now against only Armstrong, who plaintiffs allege was responsible for setting CTI's break policies. Dkt. 40, ¶ 12. The second proposed collective is against Oz only because Armstrong left her job when CTI was acquired by Oz. It's undisputed that there are differences between Oz and CTI's break procedures, so the court will consider them separately.

**B. Armstrong collective**

This proposed collective is defined as all customer service agents who were employed by defendant Dorothy Armstrong from April 29, 2018, to September 1, 2020, which is when plaintiffs say CTI sold its assets to Oz. Plaintiffs don't include a limitation for hourly employees, presumably because all customer service agents are hourly employees. *See* Dkt. 40, Am. Cpt. ¶¶ 25–26 (defendants employed "the Classes as hourly employees"). In any event, Armstrong doesn't object to the collective definition, so the court need not consider that issue.

---

[2] Plaintiffs acknowledge that breaks of more than 20 but less than 30 minutes may be unpaid "under special conditions." 29 C.F.R. § 785.19. Defendants don't contend that there any special conditions in this case that would undermine a finding that the members of the proposed collectives are similarly situated, so the court need not consider that issue.

To support the existence of a policy or practice of failing to pay employees for breaks of less than 30 minutes, plaintiffs cite two things: (1) declarations of employees Deborah Wallis and Brian Hahn; and (2) CTI's time records for Hannah VanEps from June and July 2020. Wallis and Hahn say that they were required to clock out whenever they were unable to take a call, regardless of the duration of the break and regardless of the reason, including to use the bathroom. Dkt. 47, ¶ 5 and Dkt. 48, ¶ 5. They also say that they weren't paid for any time when they were clocked out. Dkt. 47, ¶ 6 and Dkt. 48, ¶ 6.

The time records for VanEps show that there were many instances when she clocked out for breaks of less than 30 minutes. Dkt. 49-1. Those records don't show whether VanEps was paid for that time. Instead, plaintiffs submitted a declaration from one of their attorneys, who says that VanEps's records show that she was paid for 40.06 hours of work during the workweek beginning June 28, 2020, but she should have been paid for 41.35 hours if breaks of less than 30 minutes were compensated. Dkt. 49, ¶ 4.

Plaintiffs didn't submit the records showing how much VanEps was compensated. And courts generally don't consider testimony from a party's attorney on substantive issues. *See Petrilli v. Drechsel*, 94 F.3d 325, 330 (7th Cir. 1996) ("The advocate-witness rule bars counsel from acting as both an advocate and a witness in a single proceeding except under special circumstances."). But it's reasonable to infer that VanEps wasn't paid for time that wasn't included on her time sheet. And even if the court disregards VanEps's records and counsel's declaration, Wallis and Hahn's declarations are sufficient under the circumstances of this case to make a modest factual showing that there was a consistent practice at CTI of failing to pay employees for breaks of less than 30 minutes. *See Kelly*, 256 F.R.D. at 629 (a small number of employee declarations may be sufficient). Armstrong cites no evidence suggesting that Wallis

4

and Hahn's experience was unusual, so it's reasonable to infer that other employees were treated the same way.

In her opposition brief, Armstrong doesn't dispute that plaintiffs have made a modest factual showing that they are similarly situated to other members of the proposed collective. Instead, most of her brief is devoted to arguing that plaintiffs haven't adduced sufficient evidence to show that Armstrong had enough control to qualify as an "employer" under the FLSA. But that's a merits issue; it has nothing to do with whether plaintiffs are similarly situated. Armstrong hasn't moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), so if she believes that she can't be held liable as an employer under 29 U.S.C. § 203(d), she will have to move for summary judgment on that issue.

Armstrong also "objects" to plaintiffs' motion for conditional certification on the ground that plaintiffs named her as a defendant only a few weeks before filing their motion. Dkt. 60, at 1. But if Armstrong believed that she didn't have enough time to prepare a response, she should have filed a request for an extension of time, so the court could stay further briefing. In any event, Armstrong doesn't identify any additional information she would have presented to the court to defeat plaintiffs' motion if she had more time to prepare. The court declines to deny an otherwise properly supported motion based on vague assertions of prejudice. If Armstrong believes that plaintiffs aren't in fact similarly situated, she may move to decertify the collective by the deadline for doing so.

## C. Oz collective

This proposed collective is defined as all customer service agents employed by defendant Oz Management Group, Inc. from May 18, 2018, to the present. Oz didn't purchase CTI's assets until September 2020, and plaintiffs don't contend that Oz can be held liable for any

FLSA violations by CTI or Armstrong. But the proposed collective extends back to 2018 because plaintiffs allege that Oz's own break policies violated the FLSA even before it hired CTI's employees.

Plaintiffs contend that Oz violated the FLSA by failing to pay employees for "unscheduled" breaks of less than 30 minutes, as well as some scheduled breaks. The two types of breaks raise different issues, so the court will consider them separately. The court will approve separate collectives for each alleged problem.

1. **Unscheduled breaks**

In arguing that the members of this collective are similarly situated, plaintiffs rely primarily on the testimony of Oz's human resources manager, Luanne Bibeau. In her deposition, Bibeau testified that Oz employees have been instructed since 2015 to clock out for some breaks but not others. Dkt. 45 (Bibeau Dep. 39:15–45:25). Specifically, Bibeau said that employees are paid for any scheduled 15-minute break, but if employees take "unscheduled" breaks of any duration, such as for using the bathroom, they are instructed to clock out, meaning that they won't be paid for that time. *Id.* at 42:17–43:21, 44:10–45:25. Plaintiffs also cite Wallis's time records from dates after Wallis became an Oz employee, showing that she continued to clock out for breaks of less than 30 minutes. Dkt. 47-4.

Bibeau is Oz's designated corporate representative under Federal Rule of Civil Procedure 30(b)(6), so her testimony is sufficient at this stage to show the existence of a company policy. And Wallis's time records are some evidence that employees were following the company's instructions and not being paid for short breaks.

Oz doesn't meaningfully respond to plaintiffs' evidence. Oz contends that Wallis was simply failing to follow directions when she clocked out for short breaks, Dkt. 57, at 19, but it

6

cites no evidence to support that allegation. And Oz doesn't address Bibeau's testimony acknowledging that employees were instructed to clock out for any unscheduled break. So the court concludes that plaintiffs have made a modest factual showing that members of this collective are similarly situated.

2. **Infinity Telephone time keeping system**

Plaintiffs also say that Oz failed to pay employees even for some scheduled breaks while Oz was using the Infinity Telephone time keeping system, which was before January 18, 2021. Dkt. 57, at 10–12. Under that system, employees clocked out for *all* breaks, including scheduled breaks. Dkt. 45 (Bibeau Dep. 34:12–22 and 46:24–51:15). To compensate employees for scheduled breaks, "6.25% of time worked would be added back as accrued break time," which translates to 15 minutes for every four hours worked. Dkt. 57, at 10. But that could leave employees slightly undercompensated. For example, if employees worked a four-hour shift, they would be entitled to one 15-minute break. But instead of giving the employees 6.25 percent of four hours, Oz would give the employees 6.25 percent of 3.75 hours, meaning that the employees would receive pay for 3.98 hours instead of four hours. Dkt. 45 (Bibeau Dep. 49:15–51:15).

Oz acknowledges this practice, but it says that plaintiffs haven't identified any employees who were underpaid as a result. That argument isn't persuasive for two reasons. First, Oz doesn't dispute plaintiffs' allegation that "no records have been produced from Oz Management's Infinity Telephone system," Dkt. 49, ¶ 10, which would obviously hinder plaintiffs' ability to provide examples of harm. Second, Oz's argument is about damages, not whether the members of the collective are similarly situated. Oz doesn't dispute that all employees were subject to this practice during the relevant time period, which is enough to

7

show at this preliminary stage that the employees are similarly situated. If it turns out that few employees were underpaid as a result of the Infinity timekeeping system, Oz may move to decertify the collective at the appropriate time.

There is one caveat. It's undisputed that the challenged practice applied only to employees using the Infinity Telephone timekeeping system and that Oz stopped using that system after January 18, 2021. So the court will create a third collective limited to those employees.

### D. Proposed notice

When a plaintiff shows that members of the collective are similarly situated, the court may authorize the plaintiff to send notice to members of the collective so that they may opt-in to the case. *Zettler v. Thurs Trucking, Inc.*, No. 18-cv-654-jdp, 2019 WL 1929205, at *1 (W.D. Wis. Apr. 30, 2019). Plaintiffs ask the court to approve their proposed notice.

Defendants don't object to providing notice, but they object to the form of plaintiffs' proposed notice on two grounds: (1) it doesn't distinguish Oz from CTI; and (2) it doesn't identify Armstrong as a party. Oz says that plaintiffs should issue separate notices to employees of each entity because otherwise there may be confusion about "which employer the individual opt-in claimant is directing the claim toward." Dkt. 57, at 21.

In response to these objections, plaintiffs submitted three revised notices directed at three different sets of employees: (1) those who worked for CTI (and Armstrong) only; (2) those who worked for Oz only; and (3) those who worked for both CTI and Oz. Dkt. 62-1; Dkt. 62-2; and Dkt. 62-3. Two of the notices include a reference to Armstrong as one of the employers.

8

There are three minor problems with the revised notices. First, plaintiffs voluntarily dismissed CTI, so the notices should not identify CTI as a party. Second, the notices that include Armstrong don't explain how she is involved in the case. Without that explanation, including her in the notice may cause confusion. Third, plaintiffs didn't submit a notice that applies only to the employees of Armstrong and CTI. Rather, they submitted two copies of notices directed at those who were employees of CTI, Armstrong, and Oz. *See* Dkt. 62-1 and Dkt. 62-3. The court will give plaintiffs an opportunity to file revised notices that correct these problems.

Once the court approves the notice, plaintiffs ask the court to direct "Defendants" to provide a Microsoft Excel spreadsheet that includes the following information about members of the collective: names, last known mailing addresses, last known telephone numbers, last known email addresses, "markets worked for all collective members," and the last four digits of the members' social security numbers. Dkt. 51, at 23. In their reply brief, plaintiffs also ask the court to require "Defendants to produce a class list that includes an identifier as to who employed each Customer Service Agent." Dkt. 61, at 18.

Defendants don't object to being grouped together for the purpose of providing the member contact information, presumably because they are represented by the same counsel. So the court won't require plaintiffs to be more precise in identifying what information they want from each defendant. But the amount of personal information plaintiffs seek about the collective members goes beyond what this court has permitted in other cases. For example, the court has previously rejected requests for phone numbers and social security numbers, reasoning that such information is personal, the members of the collective are not yet parties to the case so their privacy must be protected, and residential and email addresses should be

9

adequate to provide notice to most potential opt-in plaintiffs. *See Sharpe v. APAC Customer Servs., Inc.*, No. 09-cv-329-bbc, 2010 WL 135168, at *7 (W.D. Wis. Jan. 11, 2010); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009). If plaintiffs believe that they have a special need for such information now, they may renew their request with their revised notices, along with an explanation of the need. Plaintiffs should also explain what they mean by "markets worked for all collective members" and why they need that information.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for conditional certification, Dkt. 42, is GRANTED. The court conditionally certifies the following collectives:

    a. all customer service agents who were employed by defendant Dorothy Armstrong from April 29, 2018, to September 1, 2020;

    b. all customer service agents employed by defendant Oz Management Group, Inc. from May 18, 2018, to the present;

    c. all customer service agents employed by Oz from May 18, 2018, to January 18, 2021, and who used the Infinity Telephone timekeeping system.

2. Plaintiffs may have until July 12, 2022, to file revised proposed notices. Defendants may have until July 15, 2022, to file any objections to the notice or to plaintiffs' request for information related to the issuing notice.

Entered July 6, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge